1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| **MARIO ALBERTO VALENZUELA,** <br><br> Petitioner, <br><br> v. <br><br><br> **JEFF MACOMBER, Warden,** <br><br> Respondent. | **Case No. 1:14-cv-01611 DAD MJS (HC)** <br><br> **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

19
20
21
22

    Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Barbara Michel, Esq. Respondent is represented by Laura Simpton of the office of the California Attorney General. Respondent declined magistrate judge jurisdiction. (ECF No. 11.)

23    **I.    Procedural Background**

24
25
26
27
28

    Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on May 27, 2011, for battery on a prison guard. (Clerk's Tr. at 350-51.) On September 27, 2011, Petitioner was sentenced to an indeterminate term of

twenty-seven (27) years to life in state prison based on California's Three Strikes Law. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District on April 12, 2012. (Lodged Doc. 1.) On March 25, 2013, the appellate court affirmed the conviction. (Lodged Doc. 4.) Petitioner sought review by the California Supreme Court on May 8, 2013. (Lodged Doc. 5.) The petition for review was summarily denied on June 12, 2013. (Lodged Doc. 6.)

Petitioner filed his federal habeas petition on September 9, 2014. (Pet., ECF No. 1.) Petitioner raised the following four claims for relief:

1) That there was insufficient evidence to show that Petitioner injured the victim or acted intentionally to injure the victim;

2) That the trial court erred by failing to instruct the jury regarding whether the injury was a result of an accident on behalf of the correctional officer;

3) That the trial court erred by failing to instruct on defenses of unconsciousness and involuntary intoxication; and

4) That the conviction was a result of juror misconduct based on the failure of a juror to disclose her prior criminal conviction and that the jury foreman having engaged in coercive behavior.

Respondent filed an answer to the petition on January 15, 2015. (Answer, ECF No. 17.) Petitioner filed a traverse to the answer on May 24, 2015. (Traverse, ECF No. 27.)

**II.    Statement of Facts**[1]

PROCEDURAL FACTS

On March 16, 2011, an information was filed charging appellant with battery on a correctional officer; it was specially alleged that appellant personally inflicted great bodily injury during the commission of this crime. (§§ 4501.5, 12022.7, subd. (a).) Nine prior felony convictions and seven

---

[1] The Fifth District Court of Appeal's summary of the facts in its March 25, 2013 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

prior prison terms were separately alleged. (§§ 667, subds. (a), (e)-(j), 1170.12, subds. (a)-(e), 667.5, subd. (b).)

Appellant pled not guilty and denied the special allegations. A bifurcated jury trial commenced on May 18, 2011.

During the morning of May 26, 2011, the trial court made the following announcement:

"Mr. Valenzuela is not here. He is being detained in a holding cell in the hallway as a result of him bolting from the courtroom, into the hallway, and proceeding down the hallway a couple of departments, before he, essentially, went to his knees and surrendered. [¶] The jurors were outside in the hallway, obviously; so they saw this. And we are going to bring the jurors in, simply to advise them it will be a few minutes before we get started."

The trial court instructed the jurors to disregard the incident. It individually questioned the jurors about their ability to follow this instruction and to remain fair and impartial. Appellant moved for a mistrial based on his misconduct. The court denied the mistrial motion, finding there was not "any reason to believe that this jury would not be able to render a fair verdict in this particular case." Appellant asked the court to discharge Juror Nos. 2193178, 2233142 and 2216314. It discharged Juror No. 2193178, but declined to discharge the other two jurors.

On May 27, 2011, the jury found appellant guilty of battery on a correctional officer. It found the great bodily injury allegation not true. The trial court sustained six prior strike allegations (allegation Nos. 2, 3, 5, 8, 9, 10) and three prior prison term allegations (allegation Nos. 20, 21, 23). It found the rest of the special allegations not true.

On August 2, 2011, appellant filed a motion for new trial based on jury misconduct.

On August 15, 2011, appellant filed a motion to dismiss his prior strikes in the interest of justice pursuant to People v. Superior Court (Romero) (1996) 13 Cal.4th 497.

On September 27, 2011, the new trial motion and Romero motion were heard and denied. Immediately thereafter, appellant was sentenced to an indeterminate term of 25 years to life imprisonment plus two[fn2] years. This sentence was ordered to run consecutive to the sentence he was already serving in Riverside County Superior Court case No. 054754.

**FN2**: Special allegations Nos. 20 and 21 arose from two prison terms that were served concurrently.

On September 28, 2011, appellant filed a timely notice of appeal.

FACTUAL CIRCUMSTANCES OF THE OFFENSE

On the morning of November 24, 2010, appellant was an inmate at the California Correctional Facility in Tehachapi. He was the sole occupant of cell No. 204 in housing unit five. Correctional Officer Michael Cich was

retrieving food trays from prisoners through the food port in each cell. Appellant refused to return his food tray. Cich[fn3] collected the food tray from the adjacent cell and then returned to appellant's cell. Appellant had covered the window on the cell door with paper. Cich asked appellant to return the food tray. Appellant replied, "I'm not giving you my tray. Come in and get it."

**FN3**: Solely to enhance readability correctional officers will be referenced to by their last names only. No disrespect is intended or implied by the omission of the officers' titles.

Correctional Sergeant Julio Hurtado was summoned to appellant's cell. Appellant would not speak to him. Hurtado opened the cell door a few inches and told appellant to step forward. Appellant did not respond to the directive. Hurtado closed the cell door. Hurtado told his supervisor, "[W]e needed to do a medical extraction, because there was no communication whatsoever with [appellant], and I couldn't determine his health or well-being at that moment."

A six-member extraction team assembled outside the cell. Hurtado unlocked the food port. He attempted to communicate with appellant but did not receive any response. Hurtado tossed a T-16 OC grenade through the food port into the cell. It made a loud bang and dispensed pepper spray. Appellant did not respond; there was no movement or sound inside the cell. Hurtado sprayed a MK-9 OC fogger, which dispensed pepper spray, through the food port into the cell.[fn4] Appellant did not cough or make any noise or movement. Hurtado closed the food port and announced on the radio that "we have a medical emergency in Housing Unit 5."

**FN4**: The T-16 OC grenade and the MK-9 OC fogger have similar effects. The user holds a MK-9 OC fogger and sprays it towards the intended recipient. The user tosses a T-16 OC grenade.

Correctional Officer Donald Smith was the "shieldman" and led five members of the extraction team into the cell; Hurtado remained outside the cell in the doorway.[fn5] Team members discovered that, in addition to covering the window on the cell door, appellant had covered the window on the cell's back wall and the ceiling light. Appellant had draped a blanket across the width of the cell. Blankets and sheets had been tied to the frame of the bunk bed, enclosing the lower bunk into a tent-like structure. The cell was dark; the only light came from the open cell door. Appellant was not visible.

**FN5**: The extraction team members were equipped with helmets with face shields, latex gloves and gas masks.

Smith knocked down the blanket that was draped across the cell and "immediately braced for attack." He slowly walked towards the back of the cell. Smith tried to remove the sheets and blankets from the bed frame but could not get them untied. Smith testified that he told the other officers that he "couldn't get the blankets down. And right about that time the blankets dropped from the left of me. And that's when the inmate attacked me from the [lower] bunk." Appellant had wrapped both of his hands with torn white cloth that "looked like wrapping that a boxer would have." He also had pieces of white cloth that may have been shirts tied "around his

4

whole face, and he had just like his eyes showing."

Smith testified that appellant rushed from the lower bunk "and headed straight towards" him. Smith moved forward. They collided. Appellant hit Smith's shield with his upper torso. Smith testified that "[w]hen we first collided, the shield came back and hit my face, pushed up against my body. And I had to use a lot of force to push him back." Appellant continued to push against Smith. Smith had to use a great deal of force to push appellant towards the back of the cell. Appellant continued to push against Smith "in the opposite direction. And also — I don't recall if it was him flailing his arms, but I was being twisted around a lot. I was struggling to [keep] the shield on him." Smith testified that appellant was "pushing against me and using his body, twisting. Just fighting against me, basically, is what he was doing." Smith drove appellant back towards the bunk area. Smith's shield got caught on the top bunk and caused Smith to twist towards the left. Appellant "came out from the bottom of the shield."

Smith dropped the shield and faced appellant. Smith testified that appellant "threw ... a right backhand towards me. And I don't recall if it struck my face or not." Smith "threw two punches" at appellant, grabbed his head and "pulled him down in between my legs" to control him. Appellant "was flailing his arms." Smith pushed appellant towards the window area. The other members of the extraction team "came and grabbed him and put him on the ground." Smith "got next to [appellant's] shoulder area. And he was kind of twisting around, still kind of struggling. And I just held his head down with my right hand." Cich laid on top of appellant so other officers could place handcuffs on him. Leg restraints were placed on appellant and he was removed from the cell.

A nurse conducted a medical evaluation of appellant. She did not observe any injuries to appellant's eyes. The skin around appellant's eyes was not orange, unlike his front abdominal area which was orange from pepper spray exposure. Appellant had abrasions to his right forehead, above his right eyebrow and on his right palm. There was redness on the back of his neck. Appellant did not report any eye injuries or vision impairment.

Smith suffered a spiral fracture on his left hand during the cell extraction. Surgery was performed; a metal plate and some screws were placed in the hand. Smith was unable to work for four months.

Appellant did not testify or present any evidence in his defense.

People v. Valenzuela, 2013 Cal. App. Unpub. LEXIS 2145, 2-9 (Mar. 25, 2013).

## II.     Discussion

### A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

1   suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the
2   conviction challenged arises out of the Kern County Superior Court, which is located
3   within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court
4   has jurisdiction over the action.

5   **B.   Legal Standard of Review**

6   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death
7   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus
8   filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,
9   114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of
10  the AEDPA; thus, it is governed by its provisions.

11  Under AEDPA, an application for a writ of habeas corpus by a person in custody
12  under a judgment of a state court may be granted only for violations of the Constitution
13  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.
14  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in
15  state court proceedings if the state court's adjudication of the claim:

16  (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established federal law, as
17  determined by the Supreme Court of the United States; or

18  (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the State
19  court proceeding.

20  28 U.S.C. § 2254(d).

21  1.   Contrary to or an Unreasonable Application of Federal Law

22  A state court decision is "contrary to" federal law if it "applies a rule that
23  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts
24  that are materially indistinguishable from" a Supreme Court case, yet reaches a different
25  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.
26  "AEDPA does not require state and federal courts to wait for some nearly identical
27  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that
28  even a general standard may be applied in an unreasonable manner" Panetti v.

6

1  *Quarterman*, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

2  "clearly established Federal law" requirement "does not demand more than a 'principle'

3  or 'general standard.'" *Musladin v. Lamarque*, 555 F.3d 830, 839 (2009).  For a state

4  decision to be an unreasonable application of clearly established federal law under §

5  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

6  (or principles) to the issue before the state court.  *Lockyer v. Andrade*, 538 U.S. 63, 70-

7  71 (2003).  A state court decision will involve an "unreasonable application of" federal

8  law only if it is "objectively unreasonable."  *Id.* at 75-76, quoting *Williams*, 529 U.S. at

9  409-10; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). In *Harrington v. Richter*, the

10  Court further stresses that "an *unreasonable* application of federal law is different from

11  an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing *Williams*, 529

12  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

13  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

14  correctness of the state court's decision."  *Id.* at 786 (citing *Yarborough v. Alvarado*, 541

15  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

16  have in reading outcomes in case-by-case determinations."  *Id.*; *Renico v. Lett*, 130 S.

17  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

18  Federal law for a state court to decline to apply a specific legal rule that has not been

19  squarely established by this Court."  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419

20  (2009), quoted by *Richter*, 131 S. Ct. at 786.

21                **2.    Review of State Decisions**

22       "Where there has been one reasoned state judgment rejecting a federal claim,

23  later unexplained orders upholding that judgment or rejecting the claim rest on the same

24  grounds." *See* *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  This is referred to as the

25  "look through" presumption.  *Id.* at 804; *Plascencia v. Alameida*, 467 F.3d 1190, 1198

26  (9th Cir. 2006). Determining whether a state court's decision resulted from an

27  unreasonable legal or factual conclusion, "does not require that there be an opinion from

28  the state court explaining the state court's reasoning." *Richter*, 131 S. Ct. at 784-85.

7

1    "Where a state court's decision is unaccompanied by an explanation, the habeas

2    petitioner's burden still must be met by showing there was no reasonable basis for the

3    state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

4    not require a state court to give reasons before its decision can be deemed to have been

5    'adjudicated on the merits.'").

6         Richter instructs that whether the state court decision is reasoned and explained,

7    or merely a summary denial, the approach to evaluating unreasonableness under §

8    2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

9    or theories supported or, as here, could have supported, the state court's decision; then

10   it must ask whether it is possible fairminded jurists could disagree that those arguments

11   or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

12   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

13   was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

14   authority to issue the writ in cases where there is no possibility fairminded jurists could

15   disagree that the state court's decision conflicts with this Court's precedents."  Id.  To put

16   it yet another way:

17
        As a condition for obtaining habeas corpus relief from a federal
        court, a state prisoner must show that the state court's ruling on the claim
18      being presented in federal court was so lacking in justification that there
        was an error well understood and comprehended in existing law beyond
19      any possibility for fairminded disagreement.

20   Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

21   are the principal forum for asserting constitutional challenges to state convictions."  Id. at

22   787. It follows from this consideration that § 2254(d) "complements the exhaustion

23   requirement and the doctrine of procedural bar to ensure that state proceedings are the

24   central process, not just a preliminary step for later federal habeas proceedings."  Id.

25   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

26              **3.    Prejudicial Impact of Constitutional Error**

27        The prejudicial impact of any constitutional error is assessed by asking whether

28   the error had "a substantial and injurious effect or influence in determining the jury's

1   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

2   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

3   state court recognized the error and reviewed it for harmlessness).  Some constitutional

4   errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

5   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

6   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

7   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

8   Strickland prejudice standard is applied and courts do not engage in a separate analysis

9   applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

10  v. Lamarque, 555 F.3d at 834.

11  **III.    Review of Petition**

12      **A.     Claim One: Insufficient Evidence**

13          Petitioner claims that there was insufficient evidence that Petitioner caused the

14  injury to the victim's hand or that he acted willfully to cause the injury. (Pet. at 6-8.)

15              **1.     State Court Decision**

16          Petitioner presented this claim by way of direct appeal to the California Court of

17  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

18  appellate court and summarily denied in a subsequent petition for review by the

19  California Supreme Court. Because the California Supreme Court's opinion is summary

20  in nature, this Court "looks through" that decision and presumes it adopted the reasoning

21  of the California Court of Appeal, the last state court to have issued a reasoned opinion.

22  See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas

23  review, "look through" presumption that higher court agrees with lower court's reasoning

24  where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d

25  663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court

26  opinion in determining whether state court's rejection of petitioner's claims was contrary

27  to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

28          In denying Petitioner's claim, the California Court of Appeal explained:

I. <u>The Battery Conviction Is Supported By Substantial Evidence</u>.

Appellant challenges the sufficiency of the evidence supporting the battery conviction. He argues there is inadequate proof "that appellant was the actual cause of the injury to Officer Smith's hand" and "that appellant acted willfully in causing the injury." We are not persuaded. Appellant's evidentiary challenge is premised on the position that the People were required to prove that appellant willfully injured Smith's hand. This premise is unsound. The crime of battery on a correctional officer does not require proof of physical harm or intent to inflict injury.

The crime of battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Section 4501.5 provides: "Every person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony ...." "Section 4501.5 criminalizes a battery committed by a prisoner on a nonprisoner. The elements of a violation of this section are: (1) The defendant was confined in a state prison; (2) while confined, the defendant willfully touched the victim in a harmful or offensive manner; and (3) the victim was not confined in a state prison." (<u>People v. Flores</u> (2009) 176 Cal.App.4th 924, 930-931, fn. omitted.)

"[A]n offensive touching, although it inflicts no bodily harm, may nonetheless constitute a battery ...." (<u>People v. Myers</u> (1998) 61 Cal.App.4th 328, 335; <u>see, e.g.</u>, <u>People v. Hamilton</u> (2009) 45 Cal.4th 863, 934 [battery conviction upheld where defendant spat on a deputy]; <u>People v. Pinholster</u> (1992) 1 Cal.4th 865, 961 [battery conviction upheld where the defendant prisoner threw a cup of urine in the victim's face].) The term "injury," as used within the context of the crime of battery, is not synonymous with physical harm. Our Supreme Court explained this principle in <u>People v. Rocha</u> (1971) 3 Cal.3d 893:

"A battery must be contemplated, but only an 'injury' as that term is used with respect to a battery need be intended. 'It has long been established, both in tort and criminal law, that "the least touching" may constitute battery. In other words, force against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' [Citation.] [¶] 'The "violent injury" here mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act.' [Citation.]" (<u>People v. Rocha</u>, <u>supra</u>, 3 Cal.3d at pp. 899-900, fn. 12; <u>see also</u> <u>People v. Myers</u>, <u>supra</u>, 61 Cal.App.4th at p. 335.)

Also, the crime of battery does not require proof that the defendant intended to injure the victim. Battery is a general intent crime. (<u>People v. Lara</u> (1996) 44 Cal.App.4th 102, 107 (<u>Lara</u>).) "As with all general intent crimes, 'the required mental state entails only an intent to do the act that causes the harm ....' [Citation.] Thus, the crime of battery requires that the defendant actually intend to commit a 'willful and unlawful use of force or violence upon the person of another.' [Citations.] In this context, the term 'willful' means 'simply a purpose or willingness to commit the act ....'

[Citation.]." (Id. at p. 107.)

We have examined the record and conclude there is ample evidence proving that appellant committed a battery on a correctional officer. Appellant was confined as an inmate in the California Correctional Facility at Tehachapi. The victim, Smith, was a correctional officer. Appellant instigated a cell extraction by refusing to comply with officers' directives. Appellant prepared for a confrontation by covering the light sources, stringing a blanket across the cell, creating a tent-like enclosure around the lower bunk and wrapping his face and hands in cloth. Appellant was hiding within the enclosure when the extraction team members entered the cell. Smith testified that appellant rushed forward and attacked him. Appellant collided with the shield Smith was holding. Smith testified that appellant was "pushing against me and using his body, twisting. Just fighting against me, basically, is what he was doing." Appellant flailed his arms and tried to punch Smith in the face. Appellant's violent attack on Smith constitutes an offensive touching. His conduct in preparing for the cell extraction, rushing towards and fighting with Smith proves that the touching was willful.

For the foregoing reasons, we reject appellant's challenge to the sufficiency of the evidence and uphold the guilty verdict on count 1.

People v. Valenzuela, 2013 Cal. App. Unpub. LEXIS 2145 at 9-13.

### 2.    Legal Standard

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only by proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the Jackson standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

In applying the Jackson standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16. A federal court sitting in habeas review is "bound to accept a state court's interpretation of state law, except in the highly unusual case in which the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a constitutional violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

### 3.    Analysis

Petitioner asserts that there is insufficient evidence linking Petitioner's conduct to

the injury to the victim's finger. Petitioner's argument is misplaced. Under California law, there is no injury requirement to prove the crime of battery – there only needs to be an unlawful touching.

Even accepting Petitioner's argument as true that Correctional Officer Smith's finger was broken during the cell extraction, but not directly relating to Petitioner's touching of Smith, his claim would still fail. During trial, Smith testified that Petitioner rushed off the bunk and attacked him. Smith described Petitioner clashing into his shield, and after the shield was twisted to the side, Smith observed Petitioner attempting to punch him. (Rep. Tr. 530-34.) Based on Smith's testimony there was ample evidence that Petitioner touched smith in a harmful manner by running into his shield and attempting to punch him. Moreover, Smith's evidence indicates that the touching was willing, as Petitioner at multiple points during the cell extraction could have complied with orders, but instead forced the guards to conduct a cell extraction and physically fought the guards when they entered his cell.

Petitioner has not shown that the state court's determination that there was sufficient evidence to support the conviction was unreasonable. The state court found that when viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that Petitioner willfully caused a battery upon the correctional officer. The finding was reasonable despite not knowing whether the injury to Smith's finger was directly attributable to Petitioner.

Under Jackson and AEDPA, the state decision is entitled to double deference on habeas review. Based on review of the trial record, there was sufficient evidence based on the testimony of Smith to convict Petitioner of battery upon a correctional officer. There was no constitutional error, and Petitioner is not entitled to relief with regard to this claim.

### B.     Claim Two  – Failure to Provide Accident Instruction

Petitioner contends the trial court violated his constitutional rights by failing to instruct the jury regarding the defense that he acted accidentally, and did not intend to

batter the correctional officer.

### 1.    State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in subsequent petition for review by the California Supreme Court. (See Lodged Docs. 1-4.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

In denying Petitioner's claim, the Fifth District Court of Appeal explained:

A. The trial court properly declined to instruct on accident.

    1. Facts.

Appellant asked the court to instruct on the defense of accident with CALCRIM No. 3404. This instruction provides, in pertinent part:

> "[The defendant is not guilty of              <insert crime[s]> if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of              <insert crime[s]> unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.]"

The court refused to instruct on accident because there was no evidence to support this defense. It reasoned:

> "But in reviewing the evidence, it's a situation where, although the light was blocked in the cell and there were chemicals agencies thrown into the cell, that certainly could have affected — along with the lights and chemical agents, it could have affected certain individuals, Mr. Valenzuela. There is no evidence that it did. In fact, the evidence was to the contrary.

> "Once they got in, there was light coming from the outside. People could see each other in the cell. There was nothing that would indicate he had anything in his eyes that would somehow hinder him from being able to see the direction in which he was moving, or anything of that sort, in the course of what took place in the cell, along with the other evidence, is what led up to the physical contact; so I'm going to decline your request. I'm going to reject this special instruction."

2. Refusing to instruct on accident was not erroneous because the record

does not contain substantial evidence supporting this defense.

Appellant argues that instruction on accident was required because there was substantial evidence supporting this defense. He points to testimony that the correctional officers wore gas masks and that Hurtado tossed a T-16 OC grenade into the cell and then sprayed a MK-9 OC fogger pepper spray. Appellant also points out that Smith did not know how his hand became injured. This argument is unconvincing. As will be explained, the trial court properly declined to instruct on accident because there was no proof that the chemical agents introduced into the cell adversely affected appellant or any evidence indicating that appellant's contact with Smith was accidental.

The trial court must instruct on an affirmative defense, either upon request or *sua sponte*, whenever the record contains substantial evidence in support of the defense unless the defense is inconsistent with the defendant's theory of the case. (People v. Salas (2006) 37 Cal.4th 967, 982.) In this context, substantial evidence has been defined as "evidence sufficient for a reasonable jury to find in favor of the defendant ...." (*Ibid.*) If the evidence on a defense is "minimal and insubstantial," instruction need not be given. (People v. Flannel (1979) 25 Cal.3d 668, 684.) The trial court's ruling is independently reviewed. (People v. Sisuphan (2010) 181 Cal.App.4th 800, 806.)

The defense of accident or misfortune is based on section 26, which provides, in relevant part:

> "All persons are capable of committing crimes except those belonging to the following classes: [¶]...[¶] ... Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." (§ 26.) "The accident defense is a claim that the defendant acted without forming the mental state necessary to make his actions a crime." (People v. Gonzalez (1999) 74 Cal.App.4th 382, 390 (Gonzales).)

Deciding if the trial court erred by refusing to instruct on accident turns on whether appellant offered evidence sufficient for a reasonable jury to find that his contact with Smith was accidental. We agree with respondent that the record does not contain evidence supporting this defense. There was no evidence showing that appellant was adversely affected by the chemical agents that were introduced into the cell. Appellant did not cough or otherwise indicate distress. He did not complain of burning eyes or of any other injury. The nurse who examined appellant did not observe any physical symptoms typically associated with exposure to pepper spray. Appellant's eyes were not swollen, red or tear stained. Appellant was not coughing or having difficulty breathing. He was not dizzy or disoriented. Appellant's barricade and wrappings succeeded in protecting him from the chemical agents introduced into the cell.

There also is no evidence showing that appellant slipped or otherwise accidentally stumbled into Smith. Smith testified that appellant's eyes were not covered by the white shirt that he had wrapped about his face.[fn6] Smith also testified that appellant lunged toward him, pushed against him and tried to hit him. Since the crime of battery does not

14

require proof of injury, the fact that Smith could not exactly pinpoint how the injury occurred does not support a reasonable inference of accident. Appellant's argument that Smith's injury could have arisen accidentally is premised on speculation, not reasonable inference derived from trial evidence.

**FN6**: Hurtado testified that appellant had covered his entire face with a towel. However, Hurtado did not enter the cell. Smith was close to appellant and was able to see that appellant's eyes were uncovered.

Appellant's reliance on <u>Lara</u>, *supra*, 44 Cal.App.4th 102 and <u>Gonzales</u>, *supra*, 74 Cal.App.4th 382 is misplaced. Both of these cases are factually inapposite. In <u>Lara</u>, the victim testified that she grabbed the back of the defendant's shirt and he "turned around to free himself from her grasp and hit her in the nose by accident." (<u>Lara</u>, *supra*, 44 Cal.App.4th at p. 106.) In <u>Gonzales</u>, the victim and two of the defendant's family members testified that the victim's injuries were caused when she was accidentally struck by a bathroom door. (<u>Gonzales</u>, *supra*, 74 Cal.App.4th at pp. 385-386.) By contrast, in this case there was undisputed testimony from Smith that appellant rushed towards him and attacked him. Appellant collided into Smith's shield and then forcefully pushed against Smith. Appellant tried to punch Smith and flailed his arms inside the small cell. There was no testimony from appellant or anyone else that his contact with Smith was accidental.

Accordingly, we conclude that the trial court properly declined to instruct on accident because the record does not contain substantial evidence supporting this defense. It necessarily follows that appellant's federal constitutional rights to due process and a fair trial were not infringed by the instructional omission.

<u>People v. Valenzuela</u>, 2013 Cal. App. Unpub. LEXIS 2145 at 13-18.

## 2. Analysis

This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether [his] conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); 28 U.S.C. § 2241. In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must first conclude that the alleged error was of constitutional magnitude. See <u>California v. Roy</u>, 519 U.S. 2, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996).

In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must conclude that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Roy</u>, 519 U.S. at 5; <u>Brecht</u>, 507 U.S. at 637. Federal habeas relief is warranted only if the Court, after reviewing the record, has "grave doubt" as to the error's effect. <u>Stanton v. Benzler</u>, 146 F.3d 726, 728 (9th Cir.

1998). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). The trial court's error in omitting a jury instruction is less likely to be prejudicial than the trial court's misstatement of the law. Henderson, 431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (habeas petitioner whose claim involves a failure to give a particular instruction bears an especially heavy burden).

To evaluate the effect of jury instructions, the Court must look at the context of the entire trial and overall charge to the jury. Estelle, 502 U.S. at 72; Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988). They may not be judged in artificial isolation. Estelle, 502 U.S. at 72. In addition, a reviewing court's principal constitutional inquiry is whether there is a reasonable likelihood that the jury applied the challenged instructions in a way that violates the Constitution. See id.

While a state is generally free to define the elements of an offense, once the state has defined the elements, due process requires that the jury be instructed on each element and instructed that they must find each element beyond a reasonable doubt. Francis v. Franklin, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); United States v. Perez, 116 F.3d 840, 847 (9th Cir. 1997); Stanton, 146 F.3d at 728.

It necessarily follows, therefore, that constitutional trial error occurs when a jury makes a guilty determination on a charged offense without a finding as to each element of the offense. According to the Supreme Court, a jury instruction that omits an element of the offense constitutes such an error. Neder v. United States, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). However, such an error "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9. Provided that such an error occurred, Petitioner's conviction can only be set aside if the error was not harmless under Chapman v. California, 386 U.S.

1   18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); Neder, 527 U.S. at 15. Under the Chapman

2   harmless error test, it must be determined "beyond a reasonable doubt" whether "the

3   error complained of did not contribute to the verdict obtained." Chapman, 386 U.S. at 24.

4        Here, Petitioner contends the trial court erred by failing to supply the jury with an

5   instruction on an accident defense to explain that the battery was unintentional. In

6   declining to find substantial evidence support a defense of accident and declining the

7   instruction, the state court noted that the scene of the cell extraction would have been

8   chaotic, with the release of pepper spray, multiple guards rushing in the cell, and

9   bedsheets tied up in the cell. However, the Court noted that the testimony was that light

10   was provided through the doorway of the cell, and that there was no evidence to support

11   a scenario where Petitioner's vison was affected by the chemical agents or otherwise

12   obscured. (Rep. Tr. at 982.) Based on the testimony presented, the court declined to

13   provide the instruction.

14        Petitioner again argues that there is no clear indication of how Smith's hand was

15   broken, but that fact alone does not create substantial evidence to support a defense of

16   accident. Petitioner presented no evidence that his vision was obscured or that he was

17   otherwise confused by the situation presenting itself during the cell extraction.

18        Finally, the failure to present the instruction was harmless. Even if properly

19   instructed, Petitioner has not shown beyond a reasonable doubt that the result would

20   have been different. Petitioner has done little refute the prosecution's evidence that he

21   rushed at and struggled with Smith during the cell extraction. The fact that Smith could

22   not attribute his broken finger to a specific event, Petitioner has not shown that his

23   actions during the confrontation could have been construed as accidental.

24        Upon review, the state court's holding comports with the requirements of federal

25   law. Based on the evidence presented, Petitioner has not shown that the court erred in

26   failing to provide the jury instruction that the battery was the result of an accident. Even

27   had an instructional error occurred, Petitioner has not shown it had substantial and

28   injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

1    Accordingly, the Court finds that the trial court did not commit instructional error

2    such that resulted in the violation of Petitioner's due process. See Estelle, 502 U.S. at

3    72. It is recommended that Petitioner's second claim for relief be denied.

**C.    Claim Three – Failure to Provide Unconsciousness and Intoxication Defense Instructions**

6    Petitioner contends the trial court violated his constitutional rights by failing to

7    instruct the jury regarding the defenses of unconsciousness and involuntary intoxication.

**1.    State Court Decision**

9    Petitioner presented this claim by way of direct appeal to the California Court of

10   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

11   appellate court and summarily denied in subsequent petition for review by the California

12   Supreme Court. (See Lodged Docs. 1-4.) Because the California Supreme Court's

13   opinion is summary in nature, this Court "looks through" that decision and presumes it

14   adopted the reasoning of the California Court of Appeal, the last state court to have

15   issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

16   In denying Petitioner's claim, the Fifth District Court of Appeal explained:

B. The trial court properly declined to instruct on unconsciousness and involuntary intoxication.

1. Facts.

    Defense counsel requested instruction on involuntary intoxication (CALCRIM No. 3427) and unconsciousness (CALCRIM No. 3425) based on the discharge of chemical agents into appellant's cell.

    The prosecutor argued that the evidence did not support either instruction. She also argued that involuntary intoxication instruction did not apply because it was designed to be given only when the intoxication occurred without any fault on the part of the intoxicated person.

    The trial court refused to instruct on involuntary intoxication, reasoning:

        "... I don't think there is really enough evidence of this Court's giving involuntary intoxication instruction either. There is really no evidence of the actual state of intoxication, if any, that there was on Mr. Valenzuela. [¶] In fact, the evidence is essentially to the effect that he guarded from being intoxicated by virtue of putting the materials over his

18

mouth, towels up, things of that sort, so that the chemicals couldn't get to him." The court refused to instruct on unconsciousness because it "wouldn't apply unless I was considering and gave the other instruction. There was some evidence he reached some level of intoxication."

2. Refusing to instruct on involuntary intoxication and unconsciousness was proper because the record does not contain substantial evidence supporting this defense.

As previously discussed, the trial court must instruct on an affirmative defense, either upon request or *sua sponte*, whenever the record contains substantial evidence in support of the defense unless the defense is inconsistent with the defendant's theory of the case. (People v. Salas, *supra*, 37 Cal.4th at p. 982.) Appellant argues the record contained substantial evidence supporting the defenses of involuntary intoxication to unconsciousness. He relies on Hurtado's testimony that he introduced pepper spray into the cell "to disorient [appellant] in case he was okay in there, because it causes irritation to the eyes." Appellant argues it was a question for the jury to determine "whether and to what degree the chemical agents deployed into the cell" affected his mental state. We disagree. The trial court correctly determined that there was insufficient evidence to justify instruction on the defenses of involuntary intoxication or unconsciousness.

The record does not contain any evidence proving that the chemical agents introduced into appellant's cell caused intoxication or unconsciousness. Cich testified that the effects of MK-9 OC fogger include coughing, sneezing, chest tightness, sensations of irritation and burning. Cich did not know if the MK-9 OC fogger had an anesthetic effect. Hurtado testified that a T-16 OC grenade causes coughing. Hurtado testified that the effects of a T-16 OC grenade are "physical only" and he is not aware of "any effects other than physical effects."

Also, there was evidence showing that appellant avoided the harmful effects of the chemical agents by covering his face and barricading himself into his bunk behind blankets and sheets. Appellant did not cough or exhibit any difficulty breathing after the chemical agents were dispensed into his cell. A nurse examined appellant after the cell extraction. She did not observe any injuries on appellant other than a few abrasions.

In sum, there was no evidence in the record indicating that the chemical agents caused intoxication or unconsciousness and no evidence that appellant was physically or mentally impaired by the agents. The record does not contain substantial evidence from which a reasonable jury could have concluded that appellant was either involuntarily intoxicated or unconscious when the assault occurred. Therefore, the trial court properly refused to instruct on these defenses. Appellant's federal constitutional rights to due process and a fair trial were not infringed by the instructional omission.[fn7]

**FN7**: This determination renders moot the Attorney General's argument that instruction on involuntary intoxication was properly denied because a fundamental criterion underlying this defense is the defendant's lack of fault and, in this case, appellant was blameworthy.

1  People v. Valenzuela, 2013 Cal. App. Unpub. LEXIS 2145 at 18-22.

2          **2.     Analysis**

3          The law regarding the review of jury instruction claims was set forth in claim two,

4  above. See *supra*, Section III(B)(2). Petitioner contends the trial court erred by failing to

5  supply the jury with instructions for unconsciousness and involuntary intoxication based

6  on the effect of the chemical agents sprayed in his cell during the cell extraction. The trial

7  court listed to the evidence presented for allowing the instructions, and even noted that

8  that defense counsel presented an "appropriate" and "artful" argument, but that the

9  evidence presented just did not support allowing the instruction. (Rep. Tr. at 985.)

10         The state court, in denying Petitioner's claim, noted that there was evidence that

11 Petitioner had mitigated the effects of the chemical agents by covering his face and

12 barricading himself in his bunk behind blankets and sheets. The court also noted that

13 Petitioner did not present evidence that he was physically or mentally impaired by the

14 chemical agents. In opposition, prosecution witness testified that the chemical agents

15 only cause physical effects, and do not cause psychological effects. (Rep. Tr. at 371-

16 373, 485-86.) Accordingly, there was no evidence that the chemicals altered Petitioner's

17 mental facilities. Further, Petitioner's actions, as described by the prosecution witnesses,

18 do not appear to be actions of an individual who was incapacitated by the chemical

19 agents used during the cell extraction. Rather, the state court was reasonable in

20 determining that there were no facts to support the claims that Petitioner was

21 unconscious or otherwise not in control of his actions.  Based the evidence presented,

22 the failure to provide the instructions was harmless. The jury was not reasonably likely to

23 find Petitioner suffered from intoxication from the chemical agents so that he was not

24 aware of his actions and lacked the intent to commit the battery. The evidence

25 suggested that Petitioner took actions to avoid contact with the chemical agents so that

26 he would be capable of assaulting the guards when they entered the cell. Even had an

27 instructional error occurred, Petitioner has not shown it had substantial and injurious

28 effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

1   Accordingly, the Court finds that the trial court did not commit instructional error

2   such that resulted in the violation of Petitioner's due process. See Estelle, 502 U.S. at

3   72. It is recommended that Petitioner's third claim for relief be denied.

4   **D.    Claim Four – Juror Misconduct**

5   Petitioner contends that his rights to due process were violated by juror

6   misconduct. He alleges (1) that one juror failed to disclose that she had a prior conviction

7   for petty theft, (2) that the foreperson acted improperly, and (3) that the jury failed to

8   deliberate with all of the members of the jury present. (Pet. at 23-29.)

9   **1.    State Court Decision**

10  Petitioner presented this claim by way of direct appeal to the California Court of

11  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

12  appellate court and summarily denied in subsequent petition for review by the California

13  Supreme Court. (See Lodged Docs. 1-4.) Because the California Supreme Court's

14  opinion is summary in nature, this Court "looks through" that decision and presumes it

15  adopted the reasoning of the California Court of Appeal, the last state court to have

16  issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

17  In denying Petitioner's claim, the Fifth District Court of Appeal explained:

18  A. Facts.

19  On August 2, 2011, appellant filed a motion for new trial based on
20  juror misconduct. The motion was supported by declarations of Juror Nos.
    2 and 12. Both of these jurors declared that "[a]t no time during
21  deliberations was I convinced beyond a reasonable doubt that [appellant]
    was guilty of the charged offenses and/or enhancements." Both jurors also
22  averred that they wrote questions to be given to the judge for further
    instruction on the law but the foreperson refused to forward the questions
23  and said that he would not be asking any questions. Juror No. 12 averred
    that the foreperson entered the deliberation room and announced that
24  appellant "is already in prison anyway, so what are the odds that he didn't
    do the battery?" They averred that when Juror No. 12 said that appellant
25  was not guilty, the foreperson angrily screamed that "he would not accept
    a hung jury and we would be here all day if there was no guilty verdict
26  because he would not come back for further deliberations. So find him
    guilty so we can go home." They both averred that the deliberations took
27  place while not all 12 jurors were present. Juror No. 12 averred that
    appellant's status as an inmate and his act of leaving the courtroom during
28  trial was discussed during deliberations. Juror No. 2 averred that the
    foreperson and another juror discussed "matters the court ordered to not

21

be discussed during deliberations." Both jurors averred that they did not know they could report the foreperson's conduct to the judge. Finally, Juror No. 2 averred that she suffered a misdemeanor petty theft conviction in 2003 but did not disclose this conviction during voir dire due to its age.

The prosecutor opposed the new trial motion and filed evidentiary objections to portions of the declarations.

Hearing on the new trial motion was held on September 27, 2011. The trial court denied the motion in a lengthy oral ruling. The court made findings on each of the averments contained in the jurors' declarations.

The trial court found that the averments by Juror Nos. 2 and 12 that they never thought appellant was guilty were inadmissible.

The trial court admitted the jurors' averments that the foreperson refused to forward their written questions "is something certainly I can consider." The trial court found there was no evidence concerning the information that was requested by the jurors and the jurors did not directly ask the court any questions despite having been provided with multiple opportunities to do so.

The trial court found that the foreperson violated an admonition of the court when he said that appellant left the courtroom because he was guilty. The court gave this event "very little weight" because appellant "should not be able to profit ... by his own wrongdoing ...."

The trial court found that averments recounting statements made by the foreperson concerning appellant's guilt were inadmissible because they reflected the foreperson's subjective reasoning process. It found that averments concerning the interactions between the jurors and foreperson were inadmissible. It found that averments concerning the foreperson's demeanor and his statement that he would not accept a hung jury to be reflections of heated juror deliberations. Also, "[t]here is no evidence, nor should there be, as to how it might have impacted other jurors. It's simply as to the bias or the prejudice of the foreperson coming into the deliberations in this particular case."

The trial court found the jurors' averments that deliberations took place when less than 12 jurors were present were admissible and "evidence[s] some misconduct." Yet, "[t]here is no evidence as to what was discussed or how it might evidence some bias by any of the jurors .... [T]here was nothing ... that it resulted in some bias against the defendant other than being a violation of the admonition ...."

The trial court determined that the jurors did not commit misconduct by discussing appellant's status as an inmate because this was an element of the charged crime. Also, "there is nothing in the declaration that references or demonstrates to the Court that the discussions as to his status as an inmate reflected some sort of bias that somehow impacted one or more of the jurors."

The trial court found that the jurors were polled after the verdict was read. They had an opportunity to report the foreperson's misconduct or "express any issues they had" with the verdict.

Finally, the trial court found that Juror No. 2's failure to disclose her prior petty theft conviction was misconduct. Yet, there was nothing indicating that the failure to disclose the conviction somehow biased the juror in reaching a decision in the case. Therefore, "it has very little weight in deciding this motion."

The trial court ruled as follows:

"So ultimately, as I indicated, I think there is a great deal in the declarations that's not admissible.... [¶]...[¶] ... There is still the fact that there was misconduct, there was failure to follow admonitions, as I've discussed. [¶] But in this particular case, in evaluating all these acts, as we have discussed, the admissible acts, the admissible conduct that occurred that I can consider for this purpose, but whether it's singularly or all together, I do not find that there was prejudice in this particular case. [¶] To the extent that I could say that there was a likelihood of bias in this particular case, that it was substantial, I simply can't find that based on the facts of the case based on the evidence before me, which is the admissible portion of the declarations. [¶] I'm going to deny the motion for a new trial at this time based on those findings."

B. Denial of the new trial motion was proper.

Appellant argues that the jury misconduct was prejudicial and the trial court erred by denying the new trial motion. This argument is unconvincing.

1. Applicable legal standards.

"An accused has a constitutional right to trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is '"capable and willing to decide the case solely on the evidence before it"' [citations]." (In re Hamilton (1999) 20 Cal.4th 273, 293-294.) Juror misconduct occurs when there is a direct violation of the juror's oaths, duties or instruction. (Id. at p. 294.) Misconduct also occurs when a juror receives outside information concerning the case or shares improper information with other jurors. (Ibid.) Yet, "with narrow exceptions, evidence that the internal thought processes of one or more jurors were biased is not admissible to impeach a verdict." (Ibid.) "[W]here a verdict is attacked for juror taint, the focus is on whether there is any overt event or circumstance, 'open to [corroboration by] sight, hearing, and the other senses' [citation], which suggests a likelihood that one or more members of the jury were influenced by improper bias." (Ibid., fn. omitted.)

Section 1181 permits the trial court to grant a motion for new trial when the jury has "been guilty of any misconduct by which a fair and due consideration of the case has been prevented" (id., subd. 3) or has decided the verdict "by any means other than a fair expression of opinion on the part of all the jurors" (id., subd. 4). When ruling on a new trial motion that is based on juror misconduct, the trial court undertakes a three-step inquiry. First, it must decide if the affidavits supporting the motions are admissible under Evidence Code section 1150.[fn8] Second,

the trial court must determine whether the facts establish misconduct. Third, the trial court must determine if the misconduct was prejudicial. (<u>People v. Bryant</u> (2011) 191 Cal.App.4th 1457, 1467.) Juror misconduct raises a rebuttable presumption of prejudice. (<u>In re Lucas</u> (2004) 33 Cal.4th 682, 696.) This presumption is rebutted "'if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no substantial likelihood that one or more jurors were actually biased against the defendant.' [Citation.]" (<u>Ibid.</u>; <u>In re Hamilton</u> <i>supra</i>, 20 Cal.4th at p. 296.)

**FN8**: Evidence Code section 1150, subdivision (a) provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

The trial court's ruling on a new trial motion is reviewed under the abuse of discretion standard and will not be reversed unless a manifest and unmistakable abuse of discretion is clearly apparent. (<u>People v. Bryant</u>, <i>supra</i>, 191 Cal.App.4th at p. 1467.) When presented with the new trial motion based on the ground of juror misconduct, "the reviewing court has a constitutional obligation to determine independently whether the misconduct prevented the complaining party from having a fair trial." (<u>People v. Nesler</u> (1997) 16 Cal.4th 561, 582, fn. 5.) The appellate court "accept[s] the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination. [Citations.]" (<u>Id.</u> at p. 582.)

2. <u>Nondisclosure of Juror No. 2's misdemeanor conviction</u>.

The trial court found that Juror No. 2's failure to disclose her prior petty theft conviction was misconduct but there was no evidence demonstrating that the omission reflected juror bias. Therefore, the court gave it "very little weight in deciding this motion."

Appellant argues that Juror No. 2's omission "undermined the jury selection process." His contention is unavailing. When a juror has concealed information, prejudice is determined by examining if the omission was made to conceal a biased state of mind. (See <u>In re Hamilton</u>, <i>supra</i>, 20 Cal.4th at pp. 294-295.) Here, there is nothing indicating that failure to disclose the prior conviction indicated any bias against appellant. There is no evidence before us that Juror No. 2 intentionally failed to disclose the 10-year-old misdemeanor conviction in an effort to conceal a bias or prejudice. The trial court correctly gave this averment little weight.

3. <u>Deliberations with less than 12 jurors present</u>.

The trial court found that misconduct occurred when deliberations took place while less than 12 jurors were present. The court then found

that the record did not contain any evidence concerning the substance of these deliberations or any evidence of bias against appellant. Therefore, the misconduct was not prejudicial.

We discern no error in the trial court's reasoning or result. The declarations by Juror Nos. 2 and 12 did not contain any information about the content of deliberations that occurred when less than 12 jurors were present. They set forth nothing more than the bare fact that deliberations took place when less than 12 jurors were present. There is no evidence that the jurors deliberated when less than 12 jurors were present because they were biased against appellant. There is no proof of bias against appellant. We agree with the trial court that the misconduct was not prejudicial.

4. The jury foreperson's conduct/statements.

Appellant repeats the averments contained in the jurors' declarations about the foreperson and asserts that these averments proved prejudicial misconduct. This argument suffers from a fatal defect. As set forth *ante* in section III.A., the trial court made an evidentiary ruling that many of the averments concerning the foreperson were not admissible. Also, the trial court separately ruled on each alleged act of misconduct and explained why the misconduct was not prejudicial. Appellant's briefing failed to acknowledge that the trial court found portions of the declarations to be inadmissible.

Appellant did not challenge the trial court's evidentiary rulings and did not object to the trial court's rulings on the averments concerning the foreperson. Therefore, any potential appellate challenges to the trial court's ruling on these points "are deemed to have been waived or abandoned." (Title Guarantee & Trust Co. v. Fraternal Finance Co. (1934) 220 Cal. 362, 363.) Appellant bears the burden of raising an issue on appeal and showing reversible error by legal argument on the point with citation of authorities. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-770; Mansell v. Board of Administration (1994) 30 Cal.App.4th 539, 546 ["it is not this court's function to serve as ... backup appellate counsel"].) We reject appellant's perfunctory and generalized claim that the foreperson committed prejudicial misconduct as insufficiently undeveloped. (People v. Williams (1997) 16 Cal.4th 153, 206; People v. Rodrigues (1994) 8 Cal.4th 1060, 1116, fn. 20.)

We have independently reviewed the trial court's rulings concerning averments about the jury foreperson. The trial court properly determined that the foreperson engaged in misconduct in two respects: (1) by refusing to relay jury questions to the court; and (2) by saying to other jurors that appellant left the courtroom because he was guilty. We agree with the trial court that this misconduct was not prejudicial.

The record does not support a substantial likelihood of prejudice against appellant. The jurors did not identify the nature of the questions that the foreman refused to relay to the court. The trial court instructed the jurors that any questions could be submitted to the court in writing (CALCRIM No. 3550) and Juror Nos. 2 and 12 failed to take advantage of this opportunity. Without knowing the content of the questions, we cannot find that the foreperson's refusal to relay the questions to the trial court was the product of a bias against appellant.

We agree with the trial court that appellant is not entitled to a new trial because the foreperson improperly referenced appellant's unauthorized flight from the courtroom as proof of guilt. The trial court reasoned that appellant "should not be able to profit ... by his own wrongdoing." In In re Hamilton, supra, 20 Cal.4th 273, our Supreme Court wrote that a defendant can never overturn a verdict by instigating an incident that influences the jurors, as follows: "At the outset, we question whether a convicted person can ever overturn the verdict on grounds that persons acting in his behalf deliberately sought to influence the jury. Certainly no such claim could ever be valid where the accused himself had instigated the incident; a party cannot profit by his or her own wrongdoing." (Id. at p. 305.) Appellant cannot flee from the courtroom and then claim reversible error because a juror mentioned his wrongful conduct during deliberations.

This court has independently reviewed the record as a mixed question of law and fact. We conclude the trial court did not abuse its discretion when it determined that the irregularity that occurred in this case was not prejudicial. The standard we apply "is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] ...." (In re Hamilton, supra, 20 Cal.4th at p. 296.) In this case, the presumption of prejudice was sufficiently rebutted. The entire record, including the nature of the misconduct and the surrounding circumstances, indicates there is not a substantial likelihood that one or more of the jurors were actually biased against appellant. (Ibid.) Therefore, we hold that the new trial motion was properly denied.

People v. Valenzuela, 2013 Cal. App. Unpub. LEXIS 2145 at 22-35.

### 2.    Relevant Law

The Fourteenth Amendment of the United States Constitution safeguards a criminal defendant's Sixth Amendment right to be tried by a panel of impartial and indifferent jurors. See Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); see also Hayes v. Ayers, 632 F.3d 500, 507 (9th Cir. 2011) (quoting Irvin, 366 U.S. at 722) ("The Sixth Amendment right to a jury trial 'guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.'") "It is not required, however, that the jurors be totally ignorant of the facts and issues involved." Irvin, 366 U.S. at 722-23 (finding that mere existence of preconceived notion of guilt or innocence of accused is insufficient by itself to rebut the presumption that a prospective juror is impartial). Rather, due process requires that a defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); see also Fields v. Brown, 503 F.3d

755, 766 (9th Cir 2007). Jurors are objectionable if they have formed such strong and deep impressions that their minds are closed against conflicting testimony. See Irvin, 366 U.S. at 722 n.3. The presence of even one biased juror deprives a defendant of the right to an impartial jury. Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998).

The Sixth Amendment also requires the jury verdict be based entirely on the evidence produced at trial. Turner v. Louisiana, 379 U.S. 466, 472-473, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965). When presented with allegations of jury misconduct or juror bias, the trial court is required to determine what transpired, the impact on the jurors, and whether or not what transpired was prejudicial. Remmer v. United States, 347 U.S. 227, 229-230, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954); Dyer, 151 F.3d at 974 ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances."). As the Supreme Court noted:

> [T]ampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Remmer, 347 U.S. at 229 (citing Mattox v. United States, 146 U.S. 140, 148-150, 13 S. Ct. 50, 36 L. Ed. 917 (1892)); see also Xiong v. Felker, 681 F.3d 1067, 1076 (9th Cir. 2012).

Further, the evaluation of claims of juror misconduct depends on whether the misconduct is based on extrinsic influences or intrinsic influences. When the misconduct stems from an extrinsic or external influence, prejudice is presumed unless the government shows it was harmless. See United States v. Remmer, 347 U.S. 227, 228-29, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954); Xiong v. Felker, 681 F.3d 1067, 1076 (9th Cir. 2012) (quoting Remmer, 347 U.S. at 228-29) ("The presumption of prejudice that arises from juror misconduct, although strong, is not conclusive; 'the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.'") The

1   situation is different when the alleged misconduct is intrinsic to the jury's deliberations.

2       "[L]ong-recognized and very substantial concerns support the protection of jury

3   deliberations from intrusive inquiry." <u>Tanner v. United States</u>, 483 U.S. 107, 127, 107 S.

4   Ct. 2739, 97 L. Ed. 2d 90 (1987). Federal Rule of Evidence 606(b) and California

5   Evidence Code section 1150(a) prohibit the use of juror testimony to impeach a verdict

6   when that testimony relates to intrinsic matters, i.e., the internal, mental processes by

7   which the verdict was rendered. <u>See</u> <u>id.</u> at 116-27 (discussing Fed. R. Evid. 606(b);

8   <u>People v. Cox</u>, 53 Cal. 3d 618, 695-96, 280 Cal. Rptr. 692, 809 P.2d 351 (1991)

9   (discussing Cal. Evid. Code § 1150(a)).

10          **3.    Analysis**

11              **a.    Undisclosed Conviction**

12      Petitioner first claims misconduct based on juror number 2 failing to disclose

13   during vior dire that she had a misdemeanor conviction. In a declaration, the juror admits

14   that she was convicted of petty theft in 2003 but failed to disclose the conviction due to

15   its age. (<u>See</u> Clerk's Tr. at 297-98.) Respondent notes that Petitioner did not request the

16   transcripts of vior dire during trial. Without records, it is not possible to determine

17   whether the juror purposely failed to disclose the conviction, or if the jurors were only

18   asked to disclose more recent convictions. Even assuming that the juror failed to

19   disclose the conviction, Petitioner has not shown that he was prejudiced by the juror's

20   conduct. While the failure to disclose the conviction deprived the parties the ability to

21   question the juror regarding any bias that she may have harbored as a result of the

22   conviction, the state court was reasonable in determining that the failure to disclose the

23   conviction was not done in an effort to conceal bias or prejudice. Petitioner was not able

24   to question the juror regarding the conviction, but has provided no argument as to why a

25   nearly ten year old theft conviction would have biased the juror.

26      The Court finds the state court's decision to be an objectively reasonable

27   application of Supreme Court precedents. The trial court in this case conducted review of

28   Petitioner's claim of juror misconduct and determined that there was no evidence of

1  prejudice based on juror bias due to the undisclosed conviction. The denial of the claim

2  was not an objectively unreasonable application of Supreme Court precedents.

3  Petitioner is not entitled to habeas corpus relief based on the failure of the juror to

4  disclose the conviction.

5  **b.    Misconduct of Juror Foreperson**

6      Petitioner next asserts that the foreperson engaged in intimidating and coercive

7  behavior that constituted misconduct. Petitioner alleges that the foreperson insinuated

8  during deliberations that Petitioner may be guilty as he was already in prison, that he

9  stated that he would not accept a hung jury, that he allowed deliberations without jurors

10 present, refused to deliver jury questions to the court, commented that Petitioner "ran out

11 of the courtroom so he must be guilty," and was otherwise rude, loud, angry, and

12 threatening.  (See Pet. at 26-27.)

13     First, to the extent that Petitioner's argument is based on the discussions of the

14 jurors during deliberations, federal law prohibits the admission of juror testimony to

15 impeach a jury verdict. See Tanner v. United States, 483 U.S. 107 (1987). To the extent

16 that Petitioner's claims are based on the comments or behavior of the jury foreman,

17 those claims relate to the internal, mental processes of the jury. There is no indication

18 that the foreperson introduced external information. To the extent that the foreman

19 presented his arguments regarding Petitioner's guilt based on the evidence presented

20 during trial in an offensive manner, the state court was reasonable in denying the claim.

21     Further the state court was reasonable in determining that the foreman did not

22 commit misconduct by refusing to relay juror questions to the court or commenting on

23 Petitioner's attempt to leave the courtroom as a sign of guilt. With regard to refusing to

24 relay juror questions, the state court found that there was no prejudice. At trial, the jury

25 was informed that they could send a note through the bailiff, if needed. (Clerk's Tr. at

26 245.) Petitioner has presented no evidence regarding what questions, if any, were not

27 relayed. Further, Petitioner has not shown how the failure to relay those questions

28 created bias against Petitioner.

Based on the evidence presented in his federal petition, the state court was reasonable in finding the alleged failure of the foreperson to relay questions to be harmless. Petitioner has not shown it had substantial and injurious effect or influence in determining the jury's verdict as he has not described what questions were to be asked, and there are no obvious evidentiary issues from a review of the record. See Brecht, 507 U.S. at 637. Accordingly, the denial of Petitioner's claim of misconduct based on the foreman's failure to relay questions was not an objectively unreasonable application of Supreme Court precedents. Petitioner is not entitled to habeas corpus relief based on the failure to convey juror questions.

Finally, with regard to the claim that the juror foreman commented on Petitioner's guilt based on Petitioner running out of the courtroom into the hallway, the state court found that Petitioner should not benefit from his own wrongful conduct. Additionally, upon reviewing the entire record, it found that even if the comments were made, there was no evidence of bias, and Petitioner was not prejudiced by the comments. Even if the foreperson took into account Petitioner's actions during trial, the state court was reasonable in finding that there was no substantial and injurious effect or influence in determining the jury's verdict based on the incident. "The Sixth Amendment affords no relief when the defendant's own misconduct caused the alleged juror partiality and the trial judge employed reasonable means under the circumstances to preserve the trial's fairness." Williams v. Woodford, 384 F.3d 567, 626 (9th Cir. 2002). In this case, the trial court held a hearing after the incident and removed several jurors, but kept several other jurors on the panel that the court believed could remain impartial. In addition to taking adequate safeguards, there was significant evidence of Petitioner's guilt based on the evidence presented at trial. Petitioner has not shown that the denial of this claim was an objectively unreasonable application of Supreme Court law.

### c.    Deliberation Without All Jurors Present

Petitioner, in his final contention of juror misconduct, alleges that the jury continued to deliberate without jurors present. The claim is conclusory, and does not

1    provide any specific mention of how many jurors were not present, and for what period of

2    time deliberations occurred without the full jury. The declarations of the two jurors noted

3    that deliberations occurred on multiple occasions without all the jurors present. (Clerks'

4    Tr. at 294-297.) However, the jury deliberated for less than two hours before reaching a

5    verdict. (Id. at 249, 253.)

6            Petitioner has not shown that the deliberations indicate improper bias by the jury

7    or otherwise harmed his case. Even if some jurors were absent for parts of the

8    deliberation, all the jurors agreed with verdict as read in open court. In this case, the jury

9    found Petitioner guilty of battery but not of the enhancement of great bodily injury.

10   (Clerk's Tr. at 253-54.) A review of the record reflects that there was not significant

11   evidence to support the great bodily injury enhancement, and the fact that the jury did

12   not find Petitioner guilty of the enhancement is not supportive of finding that the jury was

13   biased against Petitioner. Instead, even if all the jurors were not present during

14   deliberation, they reached a verdict that was reasonable based on the record, and which

15   all jurors admitted that they were in agreement with in open court.

16          Finally, even if some of the jurors were not present, or if the result was not

17   unanimous, there would still not be a violation of federal law. As a state criminal

18   defendant in a noncapital case, Petitioner had no federal constitutional right to a

19   unanimous jury verdict. Schad v. Arizona, 501 U.S. 624, 635 n.5 (1991) ("a state criminal

20   defendant, at least in noncapital cases, has no federal right to a unanimous jury

21   verdict"); Apodaca v. Oregon, 406 U.S. 404, 410-12 (1972) (no constitutional right to

22   unanimous jury verdict in non-capital criminal cases); see also Johnson v. Louisiana,

23   406 U.S. 356, 359, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972) (the Supreme Court "has

24   never held jury unanimity to be a requisite of due process of law."). Accordingly, to the

25   extent that some jurors were not present, or the decision was not unanimous (even

26   though in this case, the jury returned a unanimous decision) there would be no violation

27   of federal law.

28          Petitioner is not entitled to federal habeas relief for his Sixth Amendment right to

1    be tried by a panel of impartial and indifferent jurors. Irvin, 366 U.S. 717, 722; Hayes,

2    632 F.3d 500, 507. It is recommended that Petitioner's fourth claim for relief be denied.

3    **IV.    Recommendation**

4         Accordingly, it is hereby recommended that the petition for a writ of habeas

5    corpus be DENIED with prejudice.

6         This Findings and Recommendation is submitted to the assigned District Judge,

7    pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

8    being served with the Findings and Recommendation, any party may file written

9    objections with the Court and serve a copy on all parties. Such a document should be

10   captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

11   to the objections shall be served and filed within fourteen (14) days after service of the

12   objections. The parties are advised that failure to file objections within the specified time

13   may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153

14   (9th Cir. 1991).

15

16   IT IS SO ORDERED.

17       Dated:   December 23, 2016          /s/ Michael J. Seng

18                                       UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28